IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| BILLY EUGENE WILLIAMS, | : |
| Petitioner, | : |
| v. | : CASE NO.: 1:22-CV-177 (LAG) (ALS) |
| WILLIAM STEEDLEY, Warden, | : |
| Respondent. | : |

# ORDER

Before the Court is the Magistrate Judge's Report and Recommendation (R&R) (Doc. 11), dated July 21, 2023, and Petitioner's Objection (Doc. 12). Petitioner seeks the issuance of a Writ of Habeas Corpus vacating his conviction for four counts of theft by deception and four counts of exploitation of the elderly under Georgia law. (Doc. 4 at 1). The R&R recommends that Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 4) be denied in part and dismissed in part. (Doc. 11 at 6–14). Specifically, the R&R recommends that Ground 1 be denied and that Grounds 2, 3, and 4 be dismissed. (*Id.*). Petitioner timely filed an Objection to the R&R. (Doc. 12). For the reasons stated below, Petitioner's Objection is **OVERRULED**, and the R&R is **ACCEPTED** and **ADOPTED**.

# BACKGROUND

A jury found Petitioner guilty on four counts of theft by deception and four counts of exploitation of the elderly in Cobb County on August 14, 2009, and the trial judge sentenced him to forty years in prison. (Doc. 9-2; Doc. 9-6 at 668:9–669:14). At trial, elderly victims testified that Petitioner sold them yardwork and tree cutting services. (Doc. 1-3 at 2–5). Petitioner demanded payment up front and then never completed the work or returned the money. (*Id.*). His co-defendant, who pled guilty, testified that he drove Petitioner to the victim's houses, endorsed the checks, and split the proceeds with Petitioner. (*Id.* at 6–7). Bank surveillance footage showed Petitioner and his co-defendant

depositing the checks. (*Id.* at 5–6). Furthermore, six Bartow County residents and a Bartow County investigator testified about similar transactions where Petitioner took money from elderly homeowners for repair jobs that he never completed. (Doc. 9-5 at 474:5–543:12).

At the beginning of the trial, the Court considered a motion to dismiss the entire venire panel. (Doc. 9-4 at 210:2–267:20). During voir dire, Petitioner's attorney asked members of the jury pool if anyone lived in or had close personal friends who lived in Indian Hills, the neighborhood of the victims. (*Id.* at 140:13–17). Dyche, a potential juror, said that he lived in Indian Hills and that one of the victims had recognized him in the courthouse lobby during a break in voir dire. (*Id.* at 141:25–142:2). He said that a victim asked him if he "w[as] ripped off as well[.]" (*Id.* at 142:4–6). The victim advocate with the district attorney's office, who coordinated the movements of witnesses and victims during the trial, explained to the trial judge that the morning of the second day of voir dire some victims, witnesses, and their families were out in the lobby area in the presence of potential jurors. (*Id.* at 204:5–9, 206:14–207:2). She further testified that she left the victims and their family members alone in the lobby for about ten minutes and, afterwards, learned that the daughter of one of the victims spoke with Dyche during that time. (*Id.* at 204:20–206:2). She was not aware of any further communication between victims and potential jurors. (*Id.* at 206:3–5).

Petitioner's trial attorney moved to dismiss the venire pool, arguing that "[a]ll three panels ha[d] been tainted" because all the potential jurors on the panels had been "intermingling with the victims" in the case. (*Id.* at 210:2–214:11). The trial court denied the motion finding that "there [was] no proof of tainting to the level that the[ venire pools] have to be struck. There [was] plenty of proof that the State and defense ha[d] adequate information to either move to strike for cause or else exercise peremptory strikes for those that they believe ha[d] exposure to these different victims." (*Id.* at 214:6–11). The trial court allowed Petitioner's counsel to ask all three of the panels if they had contact with anyone believed to be witnesses or victims in the case and allowed the attorneys to question any juror individually who answered in the affirmative. (*Id.* at 215:11–217:12). Eight potential jurors—Kaste, Tart, Sorrells, Huggins, Houston, Dyche, Bledsoe, and Burklow—

raised their hand when asked the question. (*Id.*). The trial court proceeded with sequestered, individual voir dire with these seven potential jurors. (*Id.* at 217:25–262:25)

During the individual questioning, the trial court and counsel learned about a separate comment overheard by at least one of the jurors. Dyche reported that Bledsoe told him she "overheard one of the victims saying that a brother was involved and the brother pled guilty." (*Id.* at 245:12–13, 245:15–17, 246:22–25). Bledsoe testified that she overheard the comment from one of the victims and that she may have told Dyche about it. (*Id.* at 257:7–23). Bledsoe testified that no other jurors overheard the conversation between the family members and that only Dyche was present when Bledsoe told him that the comment was made. (*Id.* at 256:1–9, 257:24–258:1).

Petitioner's counsel withdrew a motion to strike Tart after questioning him but moved to strike for cause all other jurors who had been questioned individually. (*Id.* at 217:25–267:23). The trial court granted the motions to strike Huggins, Houston, Dyche, and Bledsoe for cause and denied the motions to strike Kaste, Sorrells, and Burklow. (*Id.* at 263:7–267:20). Only one of the jurors that Petitioner's counsel moved to strike from this group eventually served on the jury—Kaste (*Id.* at 269:9–15). When she was questioned individually, Kaste explained that she did not know any of the victims or witnesses in the case personally but had spoken to a witness or victim about the weather before learning that they were involved in the case. (*Id.* at 225:16–226:2). She did not recall overhearing any conversations between victims and jurors. (*Id.* at 226:3–9). Kaste also testified that Dyche had said that several of the victims were his neighbors, but he did not say that he knew anything about the case. (*Id.* at 226:18–227:13). Kaste affirmed that she could "put aside any innuendo, any inferences that may have been drawn from a potential juror knowing some of the witnesses in th[e] case and decide based solely on the evidence that [was] presented in court" and "follow the judge's instruction and apply the law that [she was] instructed to apply at the end of the case[.]" (*Id.* at 228:11–17).

Petitioner appealed his conviction to the Court of Appeals of Georgia on four grounds. He argued that the trial court erred: (1) by denying his motion to strike the venire pool; (2) by failing to make findings on the record that the similar transaction evidence—

3

the Bartow County victim and investigator testimony—was admissible; (3) by admitting Petitioner's receipt book at trial; and (4) by imposing his sentences on each count to run consecutively. (Doc. 9-12 at 67; Doc. 1-3 at 1–2). Petitioner argued that the sentence was excessive and that the judge was punishing him for exercising his right to a jury trial. (Doc. 9-12 at 67; Doc. 1-3 at 1–2). In its first order, the Court of Appeals of Georgia explained that "no transcript of a similar transaction hearing ha[d] been included in the appellate record" and remanded the case so that the trial court could supplement the appellate record with the transcript of the similar transaction hearing and the motion for new trial hearing. (Doc. 1-2 at 3). On remand, the trial court held a hearing to address the missing transcripts. (Doc. 1-3 at 1 n.1). The court could not locate a transcript for the pre-trial similar transaction hearing "because the court reporter did not prepare a transcript of the hearing and no longer lived in Georgia." (*Id.* at 18). The trial court "noted that its bench notes indicated that such a hearing had been held and the trial court had found that the similar transactions were admissible." (*Id.*). The trial court then entered a *nunc pro tunc* order finding that the similar transaction evidence was admissible based on the similar transaction evidence presented at trial after making the following findings:

> [V]irtually all the similar transaction witnesses identified [Petitioner] as the man who stole their money, and the similar acts, involving [Petitioner] approaching older or elderly Bartow County residents and convincing them to pay him for roofing work or tree cutting that he did not intend to perform, were strikingly similar to the charged crimes in the instant case.

(*Id.* (internal quotation marks omitted)).

The Court of Appeals subsequently determined that Petitioner's enumerations of error were without merit and affirmed the trial court's rulings. (Doc. 1-3 at 22). Petitioner filed a state habeas petition on the same grounds. (Doc. 9-7). Petitioner again challenged the trial judge's denial of the motion to strike the jury panel, the admission of the similar transactions evidence, and alleged that the trial court improperly punished him for pleading guilty. (*Id.* at 5–6). Petitioner also argued that the trial court prejudicially exceeded the scope of the remand order when it conducted a new similar transaction evidence hearing

and entered a *nunc pro tunc* order on the admissibility of the similar transaction evidence. (*Id.* at 5). After a hearing, the state court denied Petitioner relief, determining that that the grounds already raised on appeal were barred by res judicata as Petitioner raised no new evidence at the habeas stage and the ground regarding the propriety of the *nunc pro tunc* order was procedurally defaulted because Petitioner did not raise the issue on appeal. (Doc. 9-8 at 7–13).

Petitioner filed the habeas petition before this Court, citing four grounds for relief: (1) Petitioner was denied his right under the Fifth and Sixth Amendments to the United States Constitution to a trial before an impartial jury due to improper juror influence during *voir dire*; (2) Petitioner was denied due process because the state failed to meet procedural and substantive prerequisites for the admission of similar fact pattern evidence; (3) Petitioner was denied due process when the trial court exceeded the scope of the state court of appeals' remand order as to the similar fact pattern evidence; and (4) Petitioner was improperly punished at sentencing for refusing to accept a plea deal and instead demanding his right to a trial by jury. (Doc. 4 at 5–10). Respondent argued that the Court should defer to the state habeas court's finding that Grounds 1, 2, and 4 were defaulted and that Ground 3 was procedurally defaulted. (Doc. 8-1 at 4–17).

The Magistrate Judge declined to determine whether the asserted grounds were procedurally defaulted, for efficiency reasons, "as the United States Court of Appeals for the Eleventh Circuit has 'said many times and as the Supreme Court has held, a federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.'" (Doc. 11 at 5 (quoting *Pace v. Warden, Ga. Diagnostic and Classification Prison*, No. 16-10868, 2023 WL 3376683, at *39 (11th Cir. May 11, 2023)). Because the Magistrate Judge found it to be apparent that Petitioner's claims failed on the merits, he proceeded to the merits and analyzed the claims *de novo*. (*Id.* at 5–13). Petitioner does not object to the Magistrate Judge's *de novo* review, and the Court finds no error. (Doc. 12 at 1–2).

With respect to the first ground, the Magistrate Judge reviewed the transcript of the voir dire and determined that there was no violation of Petitioner's Sixth Amendment right

5

to a fair and impartial jury. (Doc. 11 at 6–10). Furthermore, the Magistrate Judge recommended that the Court dismiss Grounds 2 and 3, regarding the admission of similar fact pattern evidence, because Petitioner only challenged the ruling under state evidentiary law and not federal constitutional law. (*Id.* at 10–12). Finally, as to Ground 4, the Magistrate Judge determined that Petitioner's forty-year sentence was not grossly disproportional to the four counts of fraud and four counts of elder abuse of which Petitioner was convicted. (*Id.* at 12–13). Petitioner timely filed an objection on August 3, 2023. (Doc. 12). Petitioner objects to the Magistrate Judge's findings as to Grounds 1, 2, and 3, but does not object to the Magistrate Judge's dismissal of Ground 4. (*Id.* at 2–9). Petitioner filed a motion for status update on June 21, 2024. (Doc. 13).

## STANDARD OF REVIEW

District courts have "the duty to conduct a careful and complete review" to determine "whether to accept, reject, or modify" a magistrate judge's report and recommendation. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam) (citation omitted). The Court reviews de novo the dispositive portions of a magistrate judge's report and recommendation to which a party objects and reviews the rest for clear error. *See* 28 U.S.C. § 636(b)(1)(A), (C); Fed. R. Civ. P. 72(a), (b)(3). When a party's objections, however, are "[f]rivolous, conclusive, or general[,]" the Court "need not" consider them. *United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) (per curiam) (citation omitted). An objecting party "must clearly advise the district court and pinpoint the specific findings that the party disagrees with." *Id.* at 1360.

## DISCUSSION

A federal court may only grant habeas relief to a petitioner "in custody pursuant to the judgment of a State court" if the State's adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion

opposite to that reached by [the Supreme Court] on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision involves an "unreasonable application" of law if "the state court identifies the correct governing legal rule from [the Supreme Court's cases] but unreasonably applies it to the facts of the particular state prisoner's case" or if the state court "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply." *Id.* at 407.

I.  **Objection Regarding Jury Pool**

Petitioner first objects to the Magistrate Judge's recommendation that his petition for habeas relief on the grounds that that he was deprived of his Fifth and Sixth Amendment "right to a fair and impartial jury due to serious jury infection[,]" be denied. (Doc. 12 at 2–5; *see* Doc. 11). In Ground 1, Petitioner claims that the jury that convicted him was tainted because jurors, victims, and witnesses were all in the court lobby together during breaks in voir dire, which resulted in a victim recognizing potential juror Dyche and asking if he had been "ripped off too." (Doc. 9-4 at 142:4–6; *see* Doc. 4 at 5). The Magistrate Judge only considered the bias of juror Kaste, as opposed to the bias of all three venire pools, because she was the only juror on the panel that convicted Petitioner who had contact with victims and witnesses in the lobby and who Petitioner's counsel had moved to strike for cause. (Doc. 11 at 9). The Magistrate Judge found that Petitioner did not carry his burden to show that Kaste "had preconceived notions as Petitioner's guilt or innocence of such 'nature and strength' that she could not lay aside her impression or opinion and render a verdict based on the evidence presented in court." (*Id.* at 10 (citing *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1356 (11th Cir. 2020)). In the objection, Petitioner argues that "the Magistrate Judge misapprehend[ed] the basis for [Petitioner's] constitutional violation argument—it was not Juror Kaste that was the problem, necessarily—it was the infection of the entire venire panels." (Doc. 12 at 2). Petitioner "submits that it is plain that his jury contained a number of jurors who had first-hand knowledge of the inappropriate, tainting information and behavior, and who were not properly questioned by the trial judge to

measure possible bias." (*Id.* at 2–3). Thus, Petitioner seeks a finding from the Court that the jury pool was so tainted by the intermingling of the witnesses, victims, and potential jurors and by comments made during voir dire that his Sixth Amendment right to an impartial jury trial was violated by the trial court's denial of the Motion to Strike all three venire pools. (*Id.*).

Reviewing the issue *de novo*, the trial judge did not err in finding that "there [was] no proof of tainting to the level that the[ venire pools] ha[d] to be struck. There [was] plenty of proof that the State and defense ha[d] adequate information to either move to strike for cause or else exercise peremptory strikes for those that they believe ha[d] exposure to these different victims." (Doc. 9-4 at 214:6–11). Moreover, the trial judge allowed Petitioner to explore any actual taint by asking all of the potential jurors about their contact with any victims or witnesses and following up with any panel members who had any such contact. (*See id.* at 215:11–262:25). Likewise, the Court allowed counsel to question the panel members affected by the comment about Petitioner's co-defendant and struck the panel members involved. (*See id.* at 243:5–258:8, 266:12–23) The question here is whether there was <u>actual</u>, not potential bias. "The constitutional standard of fairness requires that the criminally accused have 'a panel of impartial, indifferent jurors.'" *United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir. 1983). The Eleventh Circuit has defined actual bias as: "either an express admission of bias, or proof of specific facts showing such a close connection to the circumstances of the case that bias must be presumed." *United States v. Khoury*, 901 F.2d 948, 955 (11th Cir. 1990) (quoting *Ward v. United States*, 694 F.2d 654, 665 (11th Cir. 1983)). The trial judge properly conducted the voir dire ensuring that the jury pool was not tainted by the intermingling with the victims and witnesses. "The jurors in this case took their oath, and absent evidence to the contrary, [the Court] must presume that they were fair and impartial, as indeed they swore to be." *Khoury*, 910 F.2d at 955; (*see* Doc. 9-4 at 275:22–276:1). Accordingly, Petitioner's Objection to the Magistrate Judge's recommendation regarding the jury pool is **OVERRULED**.

**II.     Objections Regarding Evidentiary Objection**

In Ground 2, Petitioner argues that he was denied due process by the introduction of similar transaction evidence at his trial without a proper showing by the government. (Doc. 4 at 7). Similarly, in Ground 3, Petitioner alleges that the trial court erred in exceeding the scope of the Court of Appeals of Georgia's remand instructions, when, upon remand, the trial court entered a *nun pro tunc* order finding the similar transactions evidence to be admissible six years after Petitioner's conviction. (*Id.* at 8).  Petitioner objects to the Magistrate Judge's determination that Petitioner failed to state a cognizable claim under § 2254 because Petitioner only challenged the introduction of similar transaction evidence and the *nun pro tunc* order "based on state case law and state court procedural rules." (Doc. 11 at 10–12). Petitioner argues that "though[, in state and federal court, he] admittedly cit[ed] state cases and court rules, [Petitioner] recognized and pressed the issue as a series of due process violations which denied him a fair trial." (Doc. 12 at 6). Petitioner further argues the state court's error in allowing the similar transaction evidence "so infused the trial with unfairness as to deny due process of law" because the majority of the witnesses at the trial testified as to similar transactions rather than the specific crime at issue at the trial. (*Id.* at 7 (quoting *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014)).

When reviewing a habeas petition, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (first citing 28 U.S.C. § 2241; and then citing *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam)). "[F]ederal habeas corpus relief does not lie for errors of state law[,]" and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* (first quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and then citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); (*see* Doc. 11 at 11). Petitioner argued that "the trial record ultimately showed that the trial court improperly permitted the introduction of similar transaction evidence without strict compliance with Georgia Uniform Superior Court Rule 31.3 and [the] Supreme Court of Georgia's decision in *Williams v. State*," 402 S.E.2d 649 (Ga. 1996). (Doc. 4-2 at 21

9

(emphasis added)). Petitioner then argued that the Georgia Court of Appeals erred in relying on a Georgia Court of Appeals case *Harris v. State*, 473 S.E.2d 232 (Ga. Ct. App. 1996) to find that the *nunc pro tunc* order, which found the similar transactions evidence admissible, was timely when it was entered six years after Petitioner was convicted. (*Id.* at 27). These arguments ask the Court to review the Georgia Court of Appeals' decision regarding the interpretation of state case law and procedural rules, which it will not do. *See Estelle*, 502 U.S. at 67.

In the Objection, Petitioner argues, for the first time, that the state court's error in admitting the similar transaction evidence "so infused the trial with unfairness as to deny due process of law." (*Id.* at 7 (quoting *Taylor*, 760 F.3d at 1295). Petitioner argues that the admission of the similar transaction evidence infused the trial with unfairness because the majority of the witnesses at the trial testified about similar transactions rather than the specific crime at issue at Petitioner's trial. (*Id.*). Upon review of the record in this case, there was no constitutional error rendering Petitioner's trial fundamentally unfair. True, eight of the nineteen witnesses who testified at Petitioner's trial testified as to similar transaction evidence. (*See* Doc. 9-5). But Petitioner does not suggest that the similar transaction evidence was tendered for an unlawful purpose or that the testimony was not relevant. (*See* Docs. 4, 4-1, 12); *see Estelle*, 502 U.S. at 67 (explaining that where similar acts evidence was "relevant to show intent[,]" an element the government was required to prove at trial, no due process violation occurred when similar acts evidence was admitted at trial). As the trial court record shows, the similar transaction witnesses, who were elderly residents of Bartow County and Bartow County police officers, testified to a very similar set of facts as the victims in the case before the court: a man the victims identified as the Petitioner approached them at their houses offering home repair work, asked for a deposit, and never completed the work. (Doc. 9-5 at 474:5–543:12); *see Robbins v. Smith*, No. 1:08-CV-1523-TWT, 2009 WL 435041, at *11 (N.D. Ga. Feb. 18, 2009) (denying federal habeas relief where the admitted similar transaction evidence, "as described by the state appellate court, involved crimes similar to Petitioner's crime of conviction." (citation omitted)). Furthermore, the trial court record shows that the trial judge explained to the

jury that the witness testimony could only be considered "for the limited purpose of showing, if it does, identity of the perpetrator or state of mind—by that, I mean knowledge of the intent of the defendant—in the crimes charged in the case now on trial." (Doc. 9-5 at 472:18–21). The admission of the similar act evidence did not deny Petitioner due process in violation of the Fifth Amendment. Accordingly, Petitioner's Objection to the Magistrate Judge's recommendation regarding the admission of similar act evidence is **OVERRULED**.

The Court has carefully and completely considered the record and the remaining portions of the R&R. The Court reviews the Magistrate Judge's dismissal of Ground 4 for clear error and fines none.

## CERTIFICATE OF APPEALABILITY

A petitioner has no absolute right to appeal a district court's denial of his motion to vacate. 28 U.S.C. §§ 2253(c)(1)(B), 2255(d). Rather, a district court must first issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). A petitioner need not "show [s]he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate[.]" *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003) (second alteration in original)).

In this case, the Court finds that no reasonable jurist could conclude that Petitioner has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Thus, the Court declines to issue a Certificate of Appealability.

## CONCLUSION

Accordingly, Petitioner's Objections (Doc. 12) are **OVERRULED**, and the Court finds that the R&R (Doc. 11) should be, and hereby is, **ACCEPTED**, **ADOPTED**, and made the order of this Court, subject to the additional findings and holdings made herein. Therefore, the Petitioner's Amended Petition for Writ of Habeas Corpus (Doc. 4) is **DENIED in part** and **DISMISSED in part**, and a certificate of appealability is **DENIED**. The Motion for Status Update (Doc. 13) is **DENIED as moot.**

**SO ORDERED**, this 31st day of March, 2025.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**